# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SANDRA KAY MORELAND,<br><br>                  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>                  Defendant. | 3:16-cv-00530-RCJ-CBC<br><br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") granting, in part, and denying, in part, Moreland's application for disability insurance benefits and supplemental income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. Ch. 7. Currently pending before the court is Moreland's motion for judgment on the pleadings. (ECF No. 12.) In this motion, Moreland seeks the reversal of the administrative decision and remand for an award of benefits for a period between January 30, 2009 to April 5, 2012. (ECF No. 12.) The Commissioner filed a response to Moreland's motion and a cross-motion to affirm. (ECF No. 14.) For the reasons set forth herein, the Court recommends that Moreland's motion for judgment on the pleadings, (ECF No. 12), be granted and the case be remanded for further administrative proceedings, and the Commissioner's cross-motion to affirm, (ECF No. 14), be denied.

## I. STANDARDS OF REVIEW

### A. Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).

"However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.    Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not

disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p.

4

To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.    CASE BACKGROUND**

   A.    Procedural History

On April 26, 2012, Moreland protectively filed for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income benefits ("SSI") under

5

Titles II and XVI of the Social Security Act, alleging a disability onset date of January 30, 2009. (Administrative Record ("AR") 22, 187–201.) The Social Security Administration initially denied Moreland's application on September 5, 2012, and partially denied Moreland's application upon reconsideration, finding that Moreland became disabled on January 1, 2013. (*Id.* at 119–24, 129–36.) Moreland subsequently requested an administrative hearing to determine her disability status between January 30, 2009, and December 31, 2012. (*Id.* at 137-38.)

On July 3, 2014, Moreland and her attorney appeared at a hearing an Administrative Law Judge. (*Id.* at 38–68.) Gretchen Backinson, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on October 20, 2014, finding that Moreland became disabled on April 6, 2012, because her health severely declined at that time, but that prior to April 6, 2012, Moreland was not disabled because she could perform past relevant work as well as other work existing in significant numbers. (*Id.* at 21-32.) Moreland appealed, and the Appeals Council denied review on July 18, 2016. (*Id.* at 1–6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Moreland filed a complaint for judicial review on January 26, 2017. (ECF No. 12.)

B.   ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 22-32.) Ultimately, the ALJ disagreed that Moreland's disability onset date was January 30, 2009. Rather, the ALJ determined that Moreland was disabled as of April 6, 2012. (*Id.* at 30.) As of this date, the ALJ held that, based on Moreland's RFC from this date forward, her age, education and work experience, she was unable to perform past work and there were no jobs in the national economy that she could perform. (*Id.* at 31.)

Thus, the issues in this case are centered upon the Moreland's claimed disability onset date of January 30, 2009 until the ALJ's finding of the disability onset date of April 6, 2012.

In making the determinations related to this time period, the ALJ started at step one. Here, the ALJ found that Moreland had not engaged in substantial gainful activity since the alleged onset date of January 30, 2009. (*Id.* at 24.) At step two, the ALJ found that Moreland had the following severe impairments: rheumatoid arthritis, chronic fatigue syndrome and Hepatitis C per 20 C.F.R. § 404.1520(c) and 416.920(c). (*Id.*) At step three, the ALJ found that since the alleged onset date of January 30, 2009, Moreland did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.* at 25.) Next, the ALJ then determined Moreland's RFC. Prior to April 6, 2012, the ALJ determined that Moreland had an RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b) and 416.967(b), which required a sit/stand option, allowing her to sit or stand alternatively at will. (Id. at 25.) According to the ALJ's RFC determination, Moreland was "not capable of foot control operations bilaterally; she could never crawl or climb ladders, ropes or scaffolds; she could frequently balance; occasionally stoop, kneel, crouch or climb stairs and ramps." (*Id.*) However, "she needed to avoid concentrated exposure to extreme cold, hot, vibration, chemicals, unprotected heights and hazardous or moving machinery," and she was limited on the left side to frequent handling and fingering." (*Id.*)

Based on this RFC determination, the ALJ determined prior to April 6, 2012, Moreland was capable of performing past relevant work. (*Id.* at 30.) In addition, the ALJ found Moreland not disabled between January 30, 2009 until April 5, 2012 and denied her applications for a period of disability and disability insurance benefits and supplemental social security income for this time period. (*Id.* at 32.)

**III.   DISCUSSION**

There are two issues raised on appeal: (1) whether the ALJ properly afforded less weight to Moreland's primary care physician who concluded that Moreland's disability began in early 2009; and, (2) whether the ALJ properly discounted Moreland's subjective

testimony. Both issues relate to the ALJ's RFC determination for the time period between January 30, 2009 to April 5, 2012. The Court will address each issue in turn.

### A. Treating Physician Testimony

First, Moreland argues the ALJ did not properly weigh the medical opinion evidence provided by her treating physician, Dr. Louis Delionback, and as a result, failed to properly determine Moreland's RFC. (ECF No. 12 at 10-15.) Specifically, Moreland argues the ALJ failed to identify any specific inconsistencies in the medical record, or to explain why she found the medical records did not support Dr. Delionback's opinion. (*Id.*) Moreland alleges that by rejecting Dr. Delionback's medical opinion evidence, the ALJ improperly determined Moreland's RFC between January 30, 2009, and April 5, 2012. (*Id.*)

In contrast, the Commissioner alleges that the ALJ properly weighed the medical opinion evidence, including that of Dr. Delionback, by setting forth a detailed and thorough summary of the facts and conflicting evidence. (ECF No. 14 at 6-9.) The Commissioner contends that the ALJ's discussion of the medical and other evidence fully support her RFC determination. (*Id.*)

When assigning weight and resolving conflicts in medical testimony, the Ninth Circuit distinguishes between the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; and (3) neither treating nor examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to more weight than those of examining physicians, and the opinions of examining physicians are entitled to more weight than those of non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

Here, the ALJ considered Dr. Delionback's opinion. (AR at 28-30.) After a thorough review of the record, she found that prior to April 6, 2012, the severity of Moreland's alleged symptoms was not supported by the medical records and was not consistent with other substantial evidence in the record. (AR at 29.) The Court agrees there are numerous inconsistencies between Dr. Delionback's opinions and the other medical records that support her conclusion. Moreland was released by Dr. Paul Shonnard to return to work at the towing company on April 8, 2010, with a permanent limitation of "no lifting more than 20 lbs." (AR at 207-211.) In a subsequent permanent partial impairment evaluation, dated May 4, 2010, it was noted that Moreland only complained of her right hip, but that she could walk 10-15 minutes without discomfort, garden, drive, and care for herself. (AR 217-221.) Confusingly this same evaluation states that, "[Moreland] wants to return to work, but currently is unemployed while looking for a new job." (*Id.*) This is at odds with Dr. Delionback's multiple impairment questionnaire, wherein he indicates that she presented with "pain, numbness, swelling, chronic fatigue, dizzy, etc.," in her "knees, wrists, ankles and hips," throughout her treatment, beginning April 1, 2009. (AR at 734-741.) Furthermore, it is at odds with Moreland's own testimony that her hands got significantly worse in 2011, and that up until that point she believed she was ready, willing, and able to work. (AR at 51.)

Additionally, Dr. Delionback's letter on behalf of Moreland, dated May 7, 2014, states that the entire gamut of Moreland's symptoms and limitations have "existed since April of 2009," and were confirmed by laboratory tests. (AR at 865.) This includes limitations in using her fingers and hands for fine manipulations, grasping objects, only occasionally lifting and carrying up to five (5) pounds, and keeping her neck in a constant position. (*Id.*) Yet, this is also contradicted by multiple records. First, Dr. Delionback's own charts state that the first time he ordered lab work for Moreland was on January 5, 2012. (AR at 797.) Second, on June 14, 2012, the Northern Nevada Medical Group

reported that Moreland has "[n]o neck pain, no neck stiffness, and no lump or swelling in the neck." (AR at 863.) Third, Dr. Paul Shonnard released Moreland to return to work on April 8, 2010, stating that Moreland could lift and carry no more than twenty (20) pounds as opposed to the limit of five (5) pounds that Dr. Delionback asserts began in 2009. (AR at 207-211; 865.) Finally, Dr. Delionback's letter is contradicted by Dr. Jay Betz who stated on May 4, 2010, that Moreland was able to garden, drive, and take care of herself. (AR at 219.) Based on the foregoing, the court determines that the ALJ properly weighed the medical opinion evidence of Dr. Delionback and reached the proper RFC determination.

### B. Moreland's Subjective Credibility

Next, Moreland contends that, the ALJ did not properly assess her subjective symptom testimony. (ECF No. 12 at 15.) In doing so, Moreland alleges that the ALJ failed to provide clear and convincing reasons to find Moreland not credible. (*Id.*) She argues that the ALJ merely cited a boilerplate conclusion and discredited Moreland's testimony based on the receipt of unemployment benefits and her daily activities. (*Id.* at 15-17.)

By contrast, the Commissioner alleges that the ALJ provided valid bases for finding Moreland not fully credible. (ECF No. 14 at 9-12.) Specifically, the Commissioner highlights the ALJ's discussion of Moreland's medication treatment, objective medical evidence, activities of daily living, and receipt of unemployment benefits. (*Id.*) In addition, the Commissioner notes that Moreland's more favorable interpretation of the law regarding the receipt of unemployment benefits does not invalidate the ALJ's credibility finding. (*Id.* at 11-12.)

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, an ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 691 (9th Cir. 2009)). If there is such evidence, then the ALJ "may not discredit [the] claimant's testimony of pain and deny disability solely because the degree of pain alleged

by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc).  Instead, at the second step of the analysis, unless there is affirmative evidence that the claimant is malingering, the ALJ must give "specific, clear and convincing reasons" before discrediting the claimant's testimony. *Molina*, 674 F.3d at 1112 (quoting *Vasquez*, 572 F.3d at 591). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *See Vasquez*, 572 F.3d at 592 (internal citation omitted).

"In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evidence.'" *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  For example, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, inconsistencies between the claimant's testimony and their conduct, an unexplained or inadequately explained failure to seek treatment, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ found under step one of the credibility analysis that Moreland's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms."  (AR at 29.)  Therefore, the ALJ was required to proceed to the next step. Here, although there was no finding of malingering, the ALJ found that Moreland's testimony concerning the severity and limiting effects of her symptoms was not "fully credible." (*Id.* at 29-30.) The ALJ provided the following reasons for this adverse credibility determination: (1) the objective medical evidence was insufficient, and often contradictory, for the period between January 30, 2009 and April 5, 2012; (2) Moreland's receipt of unemployment benefits from 2011 to 2012 was inconsistent with her allegations of disabling pain starting on January 30, 2009; and (3) Moreland's daily activities, specifically her ability to drive during the period at issue, required complex and constant coordination.

11

1  (*Id.*)

2  The court finds that the ALJ failed to provide specific, clear and convincing reasons for rejecting Moreland's testimony regarding the severity of her symptoms. Here, the ALJ's claim that Moreland's testimony lacked credibility because the objective medical evidence was insufficient and contradictory regarding her symptoms, is insufficient to support an adverse credibility finding. The ALJ did not specifically state what part of the medical evidence was insufficient or contradictory to Moreland's testimony. Rather, the ALJ had already determined at step one that the objective medical evidence was sufficient to establish that the underlying impairment could reasonably be expected to produce the pain or other symptoms alleged. (AR at 29.) However, even if there was insufficient or contradictory objective medical evidence, the ALJ could "not discredit [the] claimant's testimony of pain and deny disability solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc).

The only remaining reasons provided by the ALJ to discredit Moreland's testimony are: (1) the fact that she allegedly received unemployment benefits between 2011 to 2012; and, (2) that Moreland's daily activities allegedly included her ability to drive a car. Neither of these reasons provides specific, clear and convincing basis to reject Moreland's testimony.

First, it was legal error to rely upon Moreland's receipt of unemployment benefits as a basis to reject her credibility. *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). In *Carmickle*, the ALJ "gave less weight to [the claimant's] testimony because he received unemployment benefits during the time he alleges disability." *Id.* at 1161. The Ninth Circuit explained that "while receipt of unemployment benefits *can undermine* a claimant's alleged inability to work fulltime, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations." *Id.* at 1161-62 (citations omitted) (emphasis added). Here, the only evidence in the record

12

1    regarding unemployment benefits is Moreland's testimony that reflects only that she
2    received unemployment benefits for a year in 2011. (*Id.* at 45-51.)  The record contains
3    no certification by Moreland that she was physically able to work full-time during the
4    relevant timeframe. (*Id.*)  Nor is it clear from the record whether Moreland was seeking
5    full or part-time work.  Accordingly, as in *Carmickle*, Moreland is correct that the ALJ erred
6    in relying on Moreland's receipt of unemployment benefits as a basis for her adverse
7    credibility finding.

8    Second, the ALJ's conclusion that Moreland's testimony was only partially credible
9    because she could "drive a car" was also in error. The Ninth Circuit has "repeatedly warned
10   that ALJs must be especially cautious in concluding that daily activities are inconsistent
11   with testimony about pain, because impairments that would unquestionably preclude work
12   and all the pressures of a workplace environment will often be consistent with doing more
13   than merely resting in bed all day." *Garrison*, 759 F.3d at 1016 ("The Social Security Act
14   does not require that claimants be utterly incapacitated to be eligible for benefits, and
15   many home activities may not be easily transferable to a work environment where it might
16   be impossible to rest periodically or take medication."); *Fair v. Bowen*, 885 F.2d 597, 603
17   (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the
18   more grueling environment of the workplace, where it might be impossible to periodically
19   rest or take medication.").

20   Disability claimants "need not 'vegetate in a dark room' in order to be eligible for
21   benefits," and they "should not be penalized for attempting to lead normal lives in the face
22   of their limitations."  *See Molina*, 674 F.3d at 1112 (quoting *Copper v. Bowen*, 815 F.2d
23   557, 561 (9th Cir. 1987)); *Reddick* at 722.  Still, a claimant's daily activities may support
24   an adverse credibility finding where the activities contradict his or her testimony, or where
25   a claimant is able to spend a substantial part of their day engaged in activities involving
26   physical functions that are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625,
27   629 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

28   Here, the record does not indicate that Moreland's ability to drive a car gave her

1  the ability to consistently spend a substantial part of her day performing physical functions
2  that are transferable to a work setting. Rather, the ALJ appears to mischaracterize
3  Moreland's testimony concerning her ability to drive in reaching the conclusion that this
4  activity belies Moreland's allegations of severe and limiting pain. The ALJ's decision states
5  that, "driving a car inherently involves constant and complex coordination." (AR at 30.)
6  Although Moreland did testify she was able to drive, she also testified that she was house-
7  bound for twenty-one (21) to twenty-five (25) days out of a month and that she could not
8  lift a gallon of milk because her hands were so stiff and swollen. (AR at 53-62.) When
9  Moreland's testimony concerning her activities of daily living is considered, it is not
10 inconsistent with Moreland's allegations of pain. Only by mischaracterizing Moreland's
11 statements was the ALJ able to conclude otherwise. *Cf. Reddick* at 722-23 ("Only if the
12 level of activity were inconsistent with Claimant's claimed limitations would these activities
13 have any bearing on Claimant's credibility. Our examination of the record shows that the
14 ALJ erred in characterizing statements and documents contained therein to reach the
15 conclusion that Claimant exaggerated her symptoms . . . In essence, the ALJ developed
16 his evidentiary basis by not fully accounting for the context of materials or all parts of the
17 testimony and reports."). The ALJ provided no analysis or consideration of any other daily
18 life activities or the like as well. The Court concludes, therefore, that the ALJ erred in
19 determining Moreland's testimony was only partially credible in this case.

20          C.      The Court will remand for further administrative proceedings

21          In this case, Moreland has requested that the Court reverse the ALJ's decision and
22 remand only for the purpose of awarding benefits for the period between January 30, 2009
23 to April 5, 2012. The credit-as-true rule "permits, but does not require, a direct award of
24 benefits on review but only where the [ALJ] has not provided sufficient reasoning for
25 rejecting testimony and there are no outstanding issues on which further proceedings in
26 the administrative court would be useful." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir.
27 2017). An automatic award of benefits in a disability benefits case is a rare and
28 prophylactic exception to the well-established ordinary remand rule. *Id.* (citing *Treichler*,

775 F.3d at 1100). Here, the Court has determined the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. However, the rare circumstances that justify an award are not present in this case. Rather, a remand for further administrative proceedings would be useful in this case in order to further the development of the record. *See Leon*, 880 F.3d at 1047 (noting that remand is useful where "the presentation of further evidence ... may well prove enlightening in light of the passage of time.) Thus, further administrative proceedings would serve an important role.

## IV.   CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is not supported by substantial evidence and remands this case pursuant to sentence four of 42 U.S.C. § 405(g).  The Court therefore recommends that Moreland's motion for reversal/remand (ECF No.12) be granted and the case remanded for further administrative proceedings consistent with the Court's order, and that the Commissioner's cross-motion to affirm (ECF No. 14) be denied.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (ECF No. 12) be **GRANTED** and Defendant's cross-motion to affirm (ECF No. 14) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **REVERSE** and **REMAND** to the Commissioner of Social Security for further administrative proceedings.

**DATED**: December 4, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**